## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Paul Steven Verlinde, | ) | **ORDER GRANTING IN PART** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT, DENYING** |
| Plaintiff, | ) | **COMMISSIONER'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT, AND** |
| v. | ) | **REMANDING DECISION** |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | Case No.: 1:22-cv-00019 |
| Defendant. | ) | |

The Plaintiff, Paul Steven Verlinde ("Verlinde" or "claimant"), seeks judicial review of the Social Security Commissioner's denial of his Title II Disability Insurance Benefits ("DIB"). This court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Before the court are competing motions for summary judgment filed by Verlinde and the Commissioner of Social Security ("Commissioner"). (Doc. Nos. 14, 18).

## I.    BACKGROUND

Verlinde filed an application for disability benefits on July 5, 2019, alleging a disability onset date of November 10, 2016, due to major depression, generalized anxiety, attention deficit disorder (ADD), and migraine headaches. (Doc. No. 12-5 at 2). The claim was denied initially on August 23, 2019, and again upon reconsideration on November 29, 2019. (Doc. No. 12-6 at 2-4, 8-9). Verlinde subsequently requested a hearing before an Administrative Law Judge ("ALJ") on December 10, 2019. (*Id.* at 10-11). The hearing was held on October 6, 2020, before ALJ Denzel Busick. (Doc. No. 12-4 at 14). Verlinde was represented by attorney Cody Passman, who appeared with Verlinde at the hearing, and by attorney Bradford Myler. (Doc. No. 12-6 at 12-16, 62-64; Doc. No. 12-4 at 14). Impartial vocational expert, Richard Ostrander, appeared

telephonically. (Doc. No. 12-4 at 14). On December 29, 2020, the ALJ issued a decision finding Verlinde not disabled. (Doc. No. 12-2 at 26).

On May 25, 2021, Verlinde submitted a request for review of the ALJ's decision to the Appeals Council. (Doc. No. 12-7 at 7-9). The Appeals Council responded on July 14, 2021, notifying Verlinde his request was filed after the 60-day window to file a request for review, and informing him that he must send a statement why the request was not sent within 60 days. (Doc. No. 12-3 at 11). Verlinde notified the Appeals Council that the untimely filing was internal oversight due to new staff and requested review and an extension of time to submit legal argument. (*Id.* at 10). The Appeals Council found good reason for delay. (Doc. No. 12-2 at 2).

On December 2, 2021, the Appeals Council denied Verlinde's request for review, rendering the ALJ's decision the final decision of the Commissioner. (*Id.*). On January 1, 2022, Verlinde filed a Complaint in this court seeking review of the Commissioner's decision. (Doc. No. 1).

At the time of the alleged onset disability date, Verlinde was 56 years of age. (Doc No. 12-5 at 2). At the date of the hearing, Verlinde was 60 years of age. Verlinde has a college education and has relevant experience as a stock clerk, CNA, and vocational rehabilitation counselor. (Doc. No. 12-9 at 13).

## II.    LEGAL STANDARD

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In determining whether an individual has a disability under the Social Security Act, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a). Under the first step, the Commissioner must consider a claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). An individual is not disabled if they have engaged in substantial gainful activity. *Id.*

Second, the Commissioner "determines whether the claimant has a severe impairment that significantly limits [the claimant's] physical or mental ability to do basic work activities." *Igo v. Colvin*, 839 F.3d 724, 727-28 (8th Cir. 2016) (quoting 20 C.F.R. § 404.1520(c)) (internal quotations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(ii). Basic work activities mean "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Basic work activities include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 1522(b).

Third, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has an impairment or combination of impairments which meet or are equal to the criteria of the listed impairments [in 20 C.F.R. pt. 404, Subpt. P, App. 1], the claimant will be presumed disabled. *Dols v. Saul*, 931

F.3d 741, 744 (8th Cir. 2019); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "To meet a listing, a claimant must show that he or she meets all of the criteria for the listed impairment." *Dols*, 931 F.3d at 744 (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)).

Fourth, the Commissioner considers residual functional capacity and past relevant work of the claimant. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity is defined as "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 1545(a)(1). A claimant is not disabled if they have residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

Lastly, the Commissioner considers the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant may make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant may do other work, they are not disabled. *Id*. To support a finding that the claimant is not disabled, there must be a demonstration of work that the claimant may do which exists in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

Upon reviewing the record, the court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for hearing. 42 U.S.C. § 405(g). To affirm, the court must find substantial evidence appearing in the record as a whole supports the Commissioner's decision. *Id.*; *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989); *Emerson v. Kijakazi*, No. 1:18-CR-146, 2022 WL 17402569, at *6 (D.N.D. Dec. 2, 2022).

"Substantial evidence is less than a preponderance of the evidence and is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (internal quotations omitted). "If after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and

one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)); *see Igo*, 839 F.3d at 728.

The court need consider evidence which supports the Commissioner's decision, as well as that which detracts from it. *Charette v. Saul*, No. 3:18-CV-254, 2019 WL 7605835, at *2 (D.N.D. Nov. 22, 2019); *see Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019). The court will not disturb the ALJ's decision unless it lies outside the available "zone of choice." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citing *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). An ALJ's decision is not outside the "zone of choice" simply because the court may have reached a different conclusion if it were the initial fact finder. *Id.*

## III.    DISCUSSION

The ALJ applied the five-step test to determine whether Verlinde was disabled. First, the ALJ found that Verlinde had not engaged in substantial gainful activity since November 10, 2016. (Doc. No. 12-2 at 14). Second, the ALJ concluded Verlinde had the following severe impairments: depressive disorder and anxiety disorder. (*Id.* at 15). Third, the ALJ found no impairment or combination of impairments met or were equal to the severity of one of the impairments listed within 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). Fourth, Verlinde had the residual functional capacity to perform medium work under 20 C.F.R. 404.1567(c). (*Id.* at 19). Specifically, the ALJ determined:

> the claimant can lift and or carry 50 pounds occasionally and less than 25 pounds frequently; he can sit for at least six hours in an eight hour workday; he can stand and or walk, combined, for up to six hours; he has no other major physical limitations; he is moderately limited in maintaining concentration, persistence and pace, where "moderate" as used herein and defined at the hearing means affected, but not precluded, such that a person is performing at lower acceptable limits for most workplaces; he is moderately limited in carrying out detailed and complex instructions and in maintaining extended concentration for such tasks and,

therefore, he is limited to jobs that involve simple and routine tasks for up to three or four steps.

(*Id.*). The ALJ also found Verlinde was unable to perform past relevant work. (*Id.* at 24). Fifth, the ALJ considered Verlinde's age, education, work experience, and residual functional capacity ("RFC"), and determined there were jobs that existed in significant numbers in the national economy that he could perform. (*Id.* at 25).

Verlinde now alleges that (1) "[t]he ALJ's RFC determination is not supported by substantial evidence because he failed to appropriately evaluate the supportability of NP LaBanca's opinion;" (2) "[t]he ALJ's RFC determination is not supported by substantial evidence because he failed to appropriately evaluate the consistency of NP LaBanca's opinion and partially-erred in the evaluation of the prior administrative medical findings;" and (3) "[t]he ALJ's analysis of Plaintiff's subjective report of symptoms is unsupported by substantial evidence." (Doc. No. 15 at 1).

### A. RFC Determination- Supportability of NP LaBanca's Opinion

Verlinde argues the ALJ erred when making the RFC determination as he failed to appropriately evaluate the supportability of Ashley LaBanca's, PMHNP ("NP LaBanca") opinion.

An ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. The Social Security Administration will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). When determining how persuasive medical opinions and all prior administrative medical findings are, the most important factors that must be considered are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Under supportability, "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The ALJ found that NP LaBanca's opinion was internally inconsistent and contradictory, as well as unsupported by her examinations and observations of Verlinde. (Doc. No. 12-2 at 22). The ALJ also refers to a Mental Capacity Assessment filled out by NP LaBanca. In reference to that assessment, the ALJ notes,

> In addition, Ms. Ashley's[1] opinion that the claimant is markedly limited in adapting or managing himself, including being extremely limited in the ability to adapt to changes is contradictory to her opinion that the claimant had no limitations for personal hygiene and is only moderately limited in the ability to be aware of hazards. Further, Ms. Ashley's opinion that the claimant has no limitations with working with others is contradictory with her opinion that the claimant is moderately limited in the ability to handle conflicts with others, respond to requests, and keep social interactions free of excessive irritability.

(Doc. No. 12-2 at 22). Within its reasoning, the ALJ does not explain why NP LaBanca's opinion is contradictory beyond citing to the limitations. The ALJ also fails to fully cite the degree of limitation in the decision, such as noting, "respond to requests" rather than "[t]he ability to respond to requests, suggestions, criticism, correction and challenges," as was written in the assessment. (*See* Doc. No. 12-31 at 6). Within the assessment NP LaBanca also provided supportive findings for the limitations, which are not provided within the ALJ's decision. *See Kelly L. R. v. O'Malley*, No. 22-CV-2952 (FPD), 2024 WL 1095887, at *5 (D. Minn. Mar. 1, 2024). This court cannot speculate as to reasons in which to support an ALJ's decision or supply a reason for an ALJ's decision that was not provided. *Id.* Because the ALJ failed to consider the supportability factor, remand is warranted.

---

[1] The ALJ incorrectly refers to Ashley LaBanca ("NP LaBanca") as Ms. Ashley throughout the decision. The court will refer to her as Ashley LaBanca or NP LaBanca.

To the extent Verlinde argues remand is appropriate for consideration of NP LaBanca's opinion and SSR 85-15, the court is not inclined to address the argument. Upon remand, the ALJ may address whether Verlinde is disabled pursuant to SSR 85-15.

**B. RFC Determination- Consistency of NP LaBanca's Opinion and Administrative Medical Findings**

Second, Verlinde states the RFC determination is not supported by substantial evidence as the ALJ did not properly evaluate the consistency of NP LaBanca's opinion and erred in the evaluation of the administrative medical findings.

Under consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The court agrees with Verlinde's assertion that the ALJ failed to make clear, what, if any, records were inconsistent with NP LaBanca's decision. The ALJ noted that NP LaBanca's "opinion is inconsistent with the record as a whole, as discussed above, as well as with the claimant's activities of daily living." (Doc. No. 12-2 at 22). However, the ALJ cites to limited sources, including to Verlinde's reported activities, when determining NP LaBanca's opinion is inconsistent. Moreover, Verlinde argues the matter should be remanded for "a proper consistency analysis concerning both NP LaBanca's opinion and Dr. Kehrwald's [prior administrative medical findings]." (*See* Doc. No. 15 at 17). Dr. Kehrwald, a state agency psychiatric consultant, completed a Psychiatric Review Technique Form and Mental Residual Capacity form in 2019 after a review of the available medical records. (Doc. No. 12-2 at 23). The ALJ did not compare Dr. Kehrwald's findings to other medical and nonmedical sources. Consistency requires a medical opinion be compared to other medical and nonmedical evidence in the record.

The ALJ also failed to adequately assess both NP LaBanca and Dr. Kehrwald's medical opinions, finding that "[t]he majority of Dr. Kehrwald's opinion is inconsistent with the record as a whole, as discussed above, and does not adequately consider the claimants subjective complaints." (Doc. No. 12-2 at 23). In addition,

> Dr. Kehrwald's opinion that the claimant is mildly limited in the ability to interact with others is overly restrictive and not supported by the medical evidence of record or the claimant's activities of daily living. As noted above, the claimant engages in many activities that involve interacting with others, and has not noted any particular concerns in this area. As also noted above, there is also little medical evidence of record that the claimant is limited in the ability to adapt and or manage himself.

(*Id.*)

It is also noted that "Dr. Kehrwald's opinion that the claimant is moderately limited in the ability to concentrate, persist, or maintain pace, is consistent with the record as a whole, as discussed above, and also adequately considers the claimant's subjective complaints." (*Id.* at 24). Further, as previously discussed by the court, the ALJ found NP LaBanca's opinion to be inconsistent with the record as a whole and the claimant's activities of daily living. (*Id.* at 22). It is not enough for the ALJ to state that an opinion is "inconsistent with the record as a whole, as discussed above." Rather, "while an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do." *Post v. Kijakazi*, No.: 4:20-CV-315 RLW, 2021 WL 4355349, at *7 (E.D. Mo. Sept. 24, 2021) (quoting *Lucas v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020)). Accordingly, the court finds that the ALJ failed to properly perform a consistency analysis.

Verlinde also requests remand for further development of treatment notes pertaining to Dr. Kehrwald, noting the ALJ "admitted" Dr. Kehrwald did not have an opportunity to review additional evidence after an initial assessment of the record. (Doc. No. 15 at 18). Nevertheless, the Social Security regulations do not require reports to be within a certain period of time for an

ALJ to rely on it. *Carter v. Kijakazi*, No. 4:20-CV-01346 JAR, 2022 WL 407120, at *7 (E.D. Mo. Feb. 10, 2022); *see Gallup v. Saul*, No. 2:19-CV-00003 SRC, 2020 WL 5107282, at *4 (E.D. Mo. Aug. 31, 2020). There is also no requirement that a consultant's medical opinion be based on subsequently created medical records. *Carter*, 2022 WL 407120, at *7; *Barker v. Colvin*, No. 14-0900-CV-W-ODS-SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records.").

Verlinde has not pointed to any legal authority requiring a medical consultant's findings to be based on subsequently created medical records or records made within a certain period. Rather, Velinde argues for remand to further develop the record. (*See* Doc. No. 15 at 18). As noted above, there is no requirement that the consultant base their opinion on subsequently created medical records.

## C. Subjective Report of Symptoms

Lastly, Verlinde asserts the ALJ's analysis of his subjective report of symptoms is unsupported by substantial evidence. He reasons the ALJ incorrectly analyzed his work before the relevant period, his mental health improvement with treatment is qualified, the ALJ erred in its analysis of his activities and hobbies, and the ALJ should have solicited testimony to clarify vague issues.

The ALJ must consider the claimant's daily activities; the duration, frequency, and intensity of the pain; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). The claimant's work history and absence of objective medical evidence may also be considered. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th

Cir. 2010). An ALJ is not required to explicitly discuss each factor, rather, it is sufficient that the ALJ acknowledge and consider those factors before discounting the claimant's subjective complaints. *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009). However, the ALJ "is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id.* (quoting *Polaski*, 739 F.2d at 1322) (emphasis in original).

   *1. Work before the Relevant Period*

  Verlinde first argues the ALJ cites to work before the relevant period. He claims the ALJ incorrectly refers to work from 2005 to 2011 and 2013 to 2016, despite the relevant period commencing on November 10, 2016.

  To the extent Verlinde argues the ALJ was incorrect in citing to his work history prior to the relevant period, the court is not inclined to agree. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (finding the ALJ did not err in its conclusion that Plaintiff's "'sporadic' work history *prior to his alleged disability date* 'indicates that he was not strongly motivated to engage in meaningful productive activity even prior to the alleged onset of disability and weighs against his credibility in assigning reasons for not working.'") (emphasis added).

  Verlinde also asserts this prior work fails to "condemn [his] subjective report of symptoms," such as that it does not speak to his ability to hold a job and caused intrusive thoughts and anxiety. (Doc. No. 15 at 20). However, while Verlinde did testify to quitting his 2013 to 2016 employment due to early hours, stress, and comparing himself to others on site, he maintained steady employment from 2005 to 2011. (Doc. No. 12-4 at 20; Doc. No. 12-9 at 13). Verlinde also obtained two part time jobs after terminating his 2016 employment. (Doc. No. 12-9 at 13). "Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work." *Schultz v. Astrue*, 479 F.3d 979, 982-83 (8th Cir. 2007).

Moreover, when a claimant leaves work for reasons other than their medical conditions, courts have found it relevant to their credibility. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *see also Johnson v. Apfel*, 240 F.3d 1145, 1147 (finding the claimant lost his job as the position was eliminated, rather than due to his disability). Therefore, the court is not persuaded by Verlinde's argument.

### 2. *Mental Health Improvement*

Likewise, Verlinde contends the ALJ's emphasis on Verlinde's mental health improvement with treatment were qualified. In matters involving mental impairments, "doing well" for purposes of treatment does not necessarily equal a finding that the claimant may return to work, such as where "medical evidence uniformly indicated that the stress of any sustained work is more than [the claimant] can handle." *Barker v. Berryhill*, No. C17-2008-LTS, 2008 WL 4868982, at *7 (N.D. Iowa Mar. 7, 2018) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001)). However, "[i]mpairments that are controllable or amendable to treatment do not support a finding of total disability." *Rollefson v. Colvin*, 45 F.Supp.3d 931, 946 (N.D. Iowa 2014) (quoting *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999)).

While Verlinde testified to his symptoms being generally the same every day (Doc. No. 12-4 at 26), the record reflects Verlinde's symptoms have shown some signs of improvement with treatment. (Doc. No. 12-13 at 35-37; Doc. No. 12-32 at 13, 28-29, 36, 41). Nevertheless, while Verlinde has experienced improvement, medical records also reflect repeated instances of depression and anxiety, suicidal thoughts, and recurrent medication changes, indicative of limited periods of improved mental health. (Doc. No. 12-13 at 32, 50, 60-61; Doc. No. 12-30 at 5-6, 39; Doc. No. 12-32 at 4, 8-11). *See Van Winkle v. Barnhart*, 55 F.App'x 784, 786 (8th Cir. 2003) (finding that "[a]lthough [Community Counseling Service] records indicate Van Winkle had improved on medication and was at times cheerful and participating appropriately, they also

reflect repeated instances of increased anxiety and depression with suicidal thoughts, insomnia, social isolation, and poor concentration; the records thus fail to show any sustained period of improved functioning."). The record also reflects notations of periodic improvement and repeated symptomatology despite treatment from providers. This includes Verlinde's provider noting,

> [Verlinde] recently has been struggling significantly with an increase in depressive and anxious symptoms. Re-emergence of suicidal thoughts and an increase in intrusive thoughts that are focusing on him and what his performance at work or in his curling league. He is obsessing more of his time, than not. It has kept him from working more or picking up any shifts. Had talked about switching to Rexulti from Zyprexa at his last visit.

(Doc. No. 12-32 at 20). Accordingly, while there are periods of marked improvement, Verlinde's improvement waxes and wanes, requiring remand for further consideration.

### 3. Activities and Hobbies

Verlinde also points to the ALJ's analysis of his activities and hobbies, arguing he has not claimed to be incapable of activities, merely of substantial gainful activity.

"Acts which are inconsistent with a claimant's assertion of a disability reflect negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). In general, "a person's ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000). Accordingly, "a claimant need not prove she is bedridden or completely helpless to be found disabled." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (quoting *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)). However, "[i]n evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the frequency, appropriateness, and independence of the activities must

13

also be considered." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007)) (internal quotations and citations omitted) (emphasis in original). If a claimant engages in "extensive daily activities," the ALJ may find the claimant is not credible. *Rollefson v. Colvin,* 45 F.Supp.3d 931, 945 (N.D. Iowa 2014); *see Wagner*, 499 F.3d at 851-53. "'Daily activities' means the 'activities of daily living,' not that the activities are necessarily done every single day." *Rollefson*, 45 F.Supp.3d at 945; *see Wagner*, 499 F.3d at 851-53.

The ALJ concluded Verlinde is independent for activities of daily living. (Doc. No. 12-2 at 22). This included the ability to drive, prepare meals, watch television, complete simple household chores, and perform physical activities like walking a 5K, curling, swimming, shoveling snow, dancing, and going on extended vacations. (*Id.* at 16, 22). Verlinde also reported interacting with others through team sports, church, community organizations, hunting and fishing. (*Id.* at 22). Third party reports indicate Verlinde engaged in hobbies such as reading, watching TV, going out to eat with friends, curling, fishing, hunting, motorcycle riding, swimming, and church. (Doc. No. 12-9 at 28, 36). The ALJ properly considered Verlinde's daily activities in finding the subjective allegations were not fully credible and did not err in his determination.

### 4. Solicitation of Testimony to Clarify Ambiguity

Finally, Verlinde argues the ALJ did not solicit testimony to clarify potential issues of ambiguity.

"A social security hearing is a non-adversarial hearing, and the ALJ has a duty to fully develop the record." *Smith v. Barnhart*, 435 F.3d 936, 930 (8th Cir. 2006); *see Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Absent unfairness or prejudice by how the ALJ did

or did not develop the record, the court will not remand. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

To the extent Verlinde argues the ALJ failed to solicit testimony that may have cleared up vague issues, emphasizing the remodel and what help Verlinde had in planning and performance, the court is not persuaded the ALJ failed to fully develop the record in a way that resulted in unfairness or prejudice. The court has already found the ALJ's analysis of Verlinde's daily activities proper. It is enough that Verlinde participated in the remodel of his basement, the ALJ does not require more testimony as to his specific involvement within the remodel. Moreover, the ALJ afforded Verlinde's counsel opportunity to question Verlinde at the hearing, and upon the conclusion of the ALJ's questioning, counsel was asked if the ALJ's questioning prompted additional questioning. The court also notes the ALJ questioned whether he had all the evidence, to which counsel confirmed. Consequently, the court is not inclined to find the ALJ failed to solicit testimony.

## IV.    CONCLUSION

For the reasons articulated above, the court concludes that the ALJ's decision was not supported by substantial evidence in the record. Verlinde's motion for summary judgment (Doc. No. 14) is **GRANTED IN PART AND DENIED IN PART**, the Commissioner's motion for summary judgment (Doc. No. 18) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further consideration of Verlinde's mental health improvement, and the supportability and consistency factors.

**IT IS SO ORDERED.**

Dated this 31st day of October, 2024.

> */s/ Clare R. Hochhalter*
> Clare R. Hochhalter, Magistrate Judge
> United States District Court